UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEROME CHAMBERS,

    Plaintiff,

v.                                       Case No. 8:24-cv-00649-WFJ-AEP

MICHELLE KING,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, it is recommended that the Commissioner's decision be reversed.

I.

**A.  Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 10). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 10). Plaintiff then requested an administrative

---

[1] Michelle King is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Michelle King should be substituted for Commissioner Martin O'Malley as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

hearing (Tr. 10). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 10). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7–20). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–3). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1976, claimed disability beginning January 1, 2004 (Tr. 153). Plaintiff obtained a 10th grade education (Tr. 171). Plaintiff has no relevant past relevant work experience (Tr. 172). Plaintiff alleged disability due to mental health issues and asthma (Tr. 171).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 6, 2023, the application date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: obesity, asthma, PTSD, and anti-social personality disorder (Tr. 12). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) except he can or should do the

following: only occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds; stand/walk about six hours and sit for about six hours in an eight-hour workday with the normal and customary breaks; occasionally climb ladders, ropes, and scaffolds and frequently climb ramps and stairs; avoid concentrated exposure to extreme cold and extreme heat and concentrated exposure to noxious fumes; perform, understand, and remember simple, routine tasks and instructions with occasional interaction with coworkers and supervisors and only occasional and brief interaction with the general public. (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16–17).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff had no past relevant work (Tr. 18). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a meat clerk, counter supply worker, or a kitchen helper (Tr. 18–19). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 19–20).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation

requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more

5

than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

**III.**

Plaintiff argues that the ALJ erred in two respects: 1) by failing to account for Plaintiff's moderate concentration, persistence, or pace limitations in the RFC assessment and 2) by failing to identify, give a reasonable explanation, and resolve an apparent conflict between the VE's testimony and the Selected Characteristics of

Occupations ("SCO") and determine whether the job numbers from the remaining occupations constituted a significant number in the national economy. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

### A. The ALJ Properly Accounted for Plaintiff's Moderate Limitations with Concentration, Persistence, or Pace in the RFC Assessment

Plaintiff first argues that the ALJ did not account for Plaintiff's moderate limitations with concentration, persistence, or pace in his hypothetical questions to the VE or the RFC assessment. Plaintiff relies heavily on *Winschel*, where an ALJ's determination was reversed after he failed to include the claimant's limitation in maintaining concentration, persistence, and pace in his hypothetical question to the VE. 631 F.3d at 1181. Importantly, the ALJ in *Winschel* also failed to either 1) "indicate that medical evidence suggested [claimant's] ability to work was unaffected by this limitation" or 2) "otherwise implicitly account for the limitation in the hypothetical." *Id.* When the ALJ uses a VE, the ALJ must pose a hypothetical question that includes all of a claimant's impairments in order for the VE's testimony to constitute substantial evidence. *Id.* at 1180 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

Plaintiff concedes that here, unlike in *Winschel*, the ALJ did discuss the medical opinions in Plaintiff's record in forming the RFC and hypothetical question to the VE. The ALJ's hypothetical question to the VE concerned a person who "can understand, remember, carry out and otherwise perform simple, routine, tasks and instructions with occasional interaction with coworkers and supervisors; occasional

7

and brief interaction with the general public" (Tr. 69–70). This language exactly mirrors the language in the ALJ's RFC for Plaintiff (Tr. 15). Plaintiff argues, however, that the RFC assessment itself was flawed. Specifically, Plaintiff argues the ALJ erred when he found the opinion of Dr. Vaningen, who conducted an independent mental health examination of Plaintiff, unpersuasive.

Although Plaintiff disagrees with his findings, the ALJ's assessment of Dr. Vaningen's medical opinion was proper. When evaluating medical opinions in an RFC assessment, adjudicators do not defer to any medical opinion or prior administrative findings. 20 C.F.R. § 404.1520c(a). Rather, ALJs evaluate the persuasiveness of the medical opinion using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* §§ 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors, and the ALJ must explain how they considered these factors in the determination or decision. *Id.* § 404.1520c(b)(2). "Supportability" refers to the relevance of the objective medical evidence and supporting explanations offered by a medical source in support of their opinions. *Id.* § 404.1520c(c)(1). "Consistency" refers to how consistent the statement is with the evidence from other medical and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

Dr. Vaningen opined that Plaintiff had marked limitations in almost every area of his examination despite what the ALJ called "mild to moderate findings" (Tr. 17). Specifically, Dr. Vaningen found that Plaintiff "was cooperative, had adequate grooming and hygiene, had fair eye contact, had coherent and goal-

8

directed thought, adequate language skills, no delusions, hallucinations or disordered thinking, had a depressed mood, was fully oriented, and, based on the results of certain tests, had impaired attention and concentration and impaired memory" (Tr. 17). Dr. Vaningen also opined that Plaintiff "had limited insight and poor to fair judgment but was able to manage his own finances" (Tr. 17). The ALJ found the opinion regarding Plaintiff's limitations unpersuasive because "[i]t is inconsistent with the doctor's own findings upon examination and inconsistent with the record as a whole and inconsistent with the opinions of the state's mental health experts" (Tr. 17).

In finding Dr. Vaningen's opinion unpersuasive, the ALJ properly utilized the supportability and consistency factors. First, the ALJ found that the medical opinion was not supported by Dr. Vaningen's own findings and seemed to be based on claimant's statements about his limitations rather than any actual findings (Tr. 17–18). Additionally, the ALJ properly compared the opinion to other record evidence to find that it was not consistent with the record as a whole. For example, state mental health experts noted that Dr. Vaningen's opinion was "an overestimate of the severity of the individual's restrictions/limitations" (Tr. 18). The ALJ also noted that the record showed Plaintiff "was typically found to have a normal affect, normal judgment and insight, a normal mood, normal speech, to be cooperative, have good eye contact, be fully oriented, alert, with an intact memory, was able to concentrate, and have logical and organized thoughts but limited insight and judgment" (Tr. 17). Though Plaintiff may not agree with the ALJ's assessment of

9

Dr. Vaningen's opinion, the RFC assessment was conducted properly. Thus, remand is improper based on this argument.

### B. The ALJ Failed to Identify, Seek a Reasonable Explanation, or Resolve an Apparent Conflict Between the VE's Testimony and the SCO

Plaintiff next argues that the ALJ did not identify, seek a reasonable explanation, or resolve an apparent conflict between the VE's testimony and the SCO. Specifically, Plaintiff argues that there is an unresolved, apparent conflict between his limitations with heat and cold exposure and the VE's finding that he could work as a kitchen helper. The Court agrees. For the following reasons, the Commissioner failed to meet her step five burden, so her decision is not supported by substantial evidence and should be remanded.

At step five of the sequential evaluation process, the ALJ must determine if the claimant could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v). The ALJ may rely on the testimony of a VE to make this finding, but an ALJ must identify and resolve any apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). SSR 00-4p; *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). An "apparent conflict" is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365. "Apparent" means "seeming real or true, but not necessarily so." *Id.* at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

Here, the ALJ's hypothetical to the VE described a person who, among other limitations, "should avoid concentrated exposure to extreme cold and extreme heat" (Tr. 70). In response, the VE stated that the hypothetical individual could work as a meat clerk, counter supply worker, or kitchen helper (Tr. 70). Per the SCO, kitchen helpers have occasional exposure to extreme cold and frequent exposure to extreme heat (Doc. 13-1). "[T]he DOT does not define 'concentrated exposure,' which pertains to the level of exposure, whereas terms such as 'frequent' and 'constant' refer to frequency and are defined in the DOT." *Sorensen v. Berryhill*, No. 8:16-CV-3500-T-DNF, 2018 WL 1225106, at *5 (M.D. Fla. Mar. 9, 2018). Notwithstanding the differences in measurement between "concentrated" exposure and "occasional or frequent" exposure, other courts have found an apparent conflict exists between jobs that require frequent exposure to heat and RFCs limiting concentrated exposure to heat. *See, e.g.*, *Jules v. Berryhill*, No. 18-CV-60963, 2019 WL 4737602, at *10 (S.D. Fla. Sept. 27, 2019) (finding an apparent conflict between the kitchen helper job and an RFC to avoid concentrated exposure to extreme cold and heat); *Vrdoljak v. Kijakazi*, 665 F. Supp. 3d 923 (N.D. Ill. 2023) ("[T]he DOT describes the hand packager job as requiring frequent exposure to extreme heat—in obvious tension with Vrdoljak's need to avoid concentrated exposure to extreme heat."). Thus, the Court finds that there is an apparent conflict between the VE's testimony and the SCO. Further, the ALJ failed to identify or address this conflict.

The Court must next determine whether the ALJ's failure to address the apparent conflict was harmless error. In *Viverette v. Commissioner of Social Security*, the Eleventh Circuit remanded where the ALJ failed to consider an apparent conflict that affected 104,000 out of 125,000 jobs proposed by the VE. 13 F.4th 1309, 1318 (11th Cir. 2021). The Eleventh Circuit was "hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy." *Id.* "Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition." *Id.* Since *Viverette*, the Eleventh Circuit has remanded even when the jobs affected by an apparent conflict represent a much smaller number of the total jobs. *See, e.g.*, *Lowery v. Acting Comm'r, Soc. Sec. Admin.*, No. 22-13913, 2024 WL 890133, at *6 (11th Cir. Mar. 1, 2024) (remanding where an apparent conflict affected 74,100 out of 251,100 total jobs). Even though the number of affected jobs in *Lowery* (about 29.5% of the total jobs) was much smaller than in *Viverette* (about 83.2% of the total jobs), the Eleventh Circuit was still hesitant to substitute its judgment for the ALJ and remanded the case. *Id.*

Here, the VE suggested three jobs Plaintiff could perform based on the ALJ's hypothetical question: meat clerk, with 100,000 jobs; counter supply worker, with 37,000 jobs; and kitchen helper, with 148,000 jobs. The apparent conflict with the kitchen helper job affects 148,000 out of a total of 285,000 jobs, or about 51.9% of the total jobs. Although 137,000 jobs remain after the conflict with the kitchen helper jobs is accounted for, the ALJ did not make a specific finding as to whether

this number alone constituted "significant numbers" in the national economy, and the Court will not do so here. *See Ledford v. Comm'r of Soc. Sec.*, No. 8:20-cv-2516-JSM-SPF, 2022 U.S. Dist. LEXIS 108563, at *12–13 (M.D. Fla. June 1, 2022) (collecting cases out of the Middle District of Florida where the Court remanded pursuant to *Viverette*). The Court recognizes there are cases in which the number of affected jobs is so small compared to the remaining jobs that substantial evidence still supports a finding that the unaffected jobs exist in significant numbers in the national economy, but that is not the case here. *See, e.g.*, *Denmark v. Kijakazi*, No. 8:20-CV-2852-AEP, 2022 WL 831903, at *7–8 (M.D. Fla. Mar. 21, 2022) (distinguishing *Viverette* where only 72,000 jobs were affected by an apparent conflict, leaving "about 551,000 jobs in the national economy that Plaintiff could perform"). Also distinguishable from this case is the situation in which the "ALJ specifically f[inds] that each of the proffered jobs, 'individually, exists in significant numbers in the national economy,' and expressly consider[s] the number of available jobs for the proffered positions 'both singly and in combination.'" *Gonzalez v. Comm'r of Soc. Sec.*, No. 8:23-CV-106-JSS, 2024 WL 489494, at *7 (M.D. Fla. Feb. 8, 2024). Consequently, the Court finds that the Commission's decision is not supported by substantial evidence and recommends remand.

## IV.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be REVERSED AND REMANDED.

2. The Clerk be directed to enter final judgment in favor of the Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 12th day of February 2025.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:   Hon. William F. Jung
      Counsel of Record